ELI MACGOWAN, Respondent, *against* JAMES C. DUFF, Appellant.

(Decided December 5th, 1887.)

Shortly before an evening's performance in defendant's theatre, plaintiff applied at the box office thereof for two reserved seats in the orchestra for that evening's performance, and was handed two tickets, for which he paid, and on which the designated seats were given him and his wife. Soon after they had taken such seats, they were, without any force or ill-treatment, compelled to leave the same by defendant's usher, who gave the seats to persons holding tickets for that evening's performance. It appeared that by mistake the ticket seller had sold plaintiff tickets for the previous evening. *Held*, that the facts did not present a case for exemplary damages.

APPEAL from a judgment of this court entered upon the verdict of a jury and from an order denying a motion for a new trial.

The facts are stated in the opinion.

*Henry Thompson*, for appellant.

*Richard Busteed & Son*, for respondent.

PER CURIAM. — [Present, DALY and VAN HOESEN, JJ.] — The learned judge told the jury that "if there was a disposition on the part of the defendant's agent to insult the plaintiff, and subject him to contempt and ridicule, which could only proceed from motives or feelings of malice, then the law permits the imposing of exemplary damages."

We think that that instruction was erroneous, because there is not in the case any evidence from which the jury could fairly conclude that the defendant's employes wished or intended to insult the plaintiff, or to subject him to ridicule or contempt; and it has often been decided to be error for a judge to submit to a jury a question of fact that does not arise upon the evidence, or to give an instruction that is irrelevant to the facts that the evidence establishes, or tends to establish (*Jackson* v. *Odell*, 9 Daly 372; *Storey* v. *Brennan*, 15 N. Y. 524; *Rouse* v. *Lewis*, 2 Keyes 352; 4 Abb. App. Dec. 121).

The evidence showed that the plaintiff, on the evening of December 27th, 1884, applied at the box office of the Standard Theatre for two reserved seats in the orchestra, and two tickets were given to him, for which he paid three dollars. Presenting the tickets to the doorkeeper he and his wife were admitted to the theatre, when an usher, after looking at the coupons that were left in the plaintiff's possession after the main part of the tickets had been taken by the doorkeeper, designated the two reserved seats that the plaintiff and his wife were to occupy. The plaintiff and his wife had been seated for ten minutes, when the usher came and asked to see their checks. When the checks were exhibited to him, it was discovered that they were for the previous night, December 26th, and were not for December 27th. Some persons had presented to the usher checks or coupons for those very seats for December 27th. The usher said that the holder of the coupons for the 27th was entitled to the seats, and that the plaintiff and his wife must vacate them. After some discussion, which appears to have been temperately conducted on both sides, the

MacGowan *v.* Duff.

plaintiff, moved by the request of his wife, who feared that trouble might arise, gave up-the seats, and left the theatre. No force was employed, for none was necessary; but it may well be that force or compulsion would have been resorted to if the plaintiff had not yielded possession of the seats. It is reasonably certain that the plaintiff and his wife believed that compulsion might be used, though no threats were made. Upon this state of facts, it is clear that if the defendant had in person done what his usher did, a case for exemplary damages would not be presented. Still less should the defendant, who was not present, be punished by exemplary damages for the act of his servant, who committed no violence, who was not insolent, and who acted under the full belief that he was doing nothing more than his duty, in seeing that the holders of coupons got the seats to which the coupons showed them to be entitled (*Townsend* v. *N. Y. Cent. R. Co.*, 56 N. Y. 295; *Hamilton* v. *Third Ave. R. Co.*, 53 N. Y. 25).

If it had appeared that the defendant had been guilty of any fraud or unfair practice, and had ejected the plaintiff for the purpose of carrying a dishonest design into execution, a different question would have arisen.

The evidence showed that the ticket seller at the box office had made a mistake. No satisfactory explanation was given as to how the mistake occurred, but yet it is probable that the ticket seller was chiefly to blame. If he had looked at the tickets before he passed them to the plaintiff; or if the doorkeeper had scrutinized them carefully when they were presented; or if the usher had looked at the date of the coupons when the plaintiff entered the theatre, the error would have been discovered before the plaintiff and his wife had taken the places that were assigned to them. But it was only slight negligence after all, and it would be unjust to punish the employer by vindictive damages.

We have not thought it necessary at this time to express any opinion as to the plaintiff's right of action. If *Wood* v. *Leadbitter* (13 Mees. & W. 838) be the law, the plain-

New York Life Ins. Co. *v.* Mayer.

tiff has no standing in court. But we doubt if any American court has fully adopted the decision in that case. *Barton* v. *Scherpf* (1 Allen 133) and *McCrea* v. *Marsh* (12 Gray 211) seem to stop far short of acquiescing in it to its full extent. In ~~Wood~~ v. *Peer*, decided in 1880 by the Supreme Court of Pennsylvania, the notion that the holder of a theatre ticket had merely a license that could at any time be revoked, was disapproved; the court saying, " The right is more in the nature of a lease, entitling the holder to the exclusive possession of the designated seat during the performance on that particular evening " (see 7 Am. Law Jour. 225; 2 Am. Law Rec. 123; *McGovering* v. *Staples*, 7 Lans. 145).

Judgment reversed and new trial ordered, with costs to abide event.